CORRECTED

# In the United States Court of Federal Claims

No. 20-764C

(Filed: November 4, 2020)

|  |  |
|---|---|
| **DIGIFLIGHT, INC.,** | ) |
| | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | ) |
| | ) |
| **THE UNITED STATES,** | ) |
| | ) |
| *Defendant.* | ) |
| | ) |
| | ) |

Bid protest; solicitation protest; RCFC 12(b)(6); material solicitation requirement; mandatory minimum requirement; clarifications; discussions; timeliness; waiver.

*Richard Joe Rupert Raleigh, Jr.*, Wilmer & Lee, P.A., Huntsville, AL, for Plaintiff.

*Sean Lynden King*, United States Department of Justice, Civil Division, Washington, DC, for Defendant.  With him on the briefs were *Ethan P. Davis*, Acting Assistant Attorney General, Civil Division, *Robert E. Kirschman, Jr.*, Director, and *Douglas K. Mickle*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC.

## OPINION AND ORDER

**SOLOMSON, Judge.**

I.      **Factual And Procedural Background**[1]

        This post-award bid protest arises from the General Services Administration's ("GSA") procurement of services under the One Acquisition Solution for Integrated

---

[1] This section does not constitute factual findings by the Court.  Rather, this Court assumes, as it must, that the factual allegations contained in the complaint are true for the purposes of resolving the pending motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 2747 (2019) ("The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss.").  The Court also has considered "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record."  *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306

Services ("OASIS") Small Business On-Ramp (Pools 1, 3, & 4) solicitation.  For the purposes of resolving the government's pending motion, the parties do not dispute the relevant facts.  This section summarizes those facts and describes the history of the litigation before this Court.

### A.  Factual Background

#### 1.    The Solicitation

GSA administers OASIS Small Business contracts, which are multiple award, indefinite delivery, indefinite quantity ("IDIQ") contracts.[2]  ECF No. 1 ("Compl.") ¶ 11.  GSA currently maintains seven separate OASIS Small Business contracts, which GSA refers to as Pools.  *Id.*  Each Pool offers customer agencies a range of services across "multiple professional service disciplines," as well as ancillary services and products from a variety of contractors.  *Id.*

On April 29, 2019, GSA issued Solicitation No. GS00Q-13-DR-0002 (the "Solicitation").  Compl. ¶ 12.  Through the Solicitation, GSA sought to on-ramp, or add, new contractors to the existing OASIS Small Business Pools 1, 3, or 4 contracts.  *Id.*; ECF No. 15-1 ("Solicitation") at 7.[3]  The deadline for the submission of all proposals to the agency was June 20, 2019.  Compl. ¶ 12.

Only a limited review of three selected Solicitation provisions is necessary to resolve the government's pending motion.  First, the Solicitation provided that GSA would award contracts to the "Highest Technically Rated Offerors with a Fair and Reasonable Price" and contemplated an award "without discussions."  Compl. ¶ 13; ECF No. 15-1 at 114.  Second, the Solicitation instructed offerors as follows:

> For Profit, Offeror's [sic] shall consider the risk to the Government under a sole-source T&M/L-H type Task Order and propose a profit rate that does not exceed 7%. CAUTION: Failure to provide clear and convincing rationale to support a profit rate that exceeds 7% *will* result in a

---

(Fed. Cir. 2015) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

[2] *See* https://www.gsa.gov/buying-selling/products-services/professional-services/buy-services/oasis-and-oasis-small-business (last visited Nov. 3, 2020).

[3] The government filed the Solicitation as an attachment to its motion for judgment on the pleadings or, in the alternative, to dismiss the complaint.  *See* ECF No. 15-1.  DigiFlight disputes whether the Court properly may consider the Solicitation in deciding this motion.  *See* ECF No. 17 at 4–5.  DigiFlight's complaint, however, incorporates by reference the Solicitation, and the Solicitation is integral to DigiFlight's claims.  Accordingly, the Court properly may, and does, rely on the Solicitation in deciding this motion.  *See Dimare Fresh, Inc.*, 808 F.3d at 1306.

> determination that Profit *is not fair and reasonable* and the
> Offeror *would not be eligible for award regardless of their technical
> score.*

ECF No. 15-1 at 113 (Section L.5.6(j)) (emphasis added).  Third, the Solicitation provided that, "[f]or Profit, the basis of fair and reasonableness will be no more than 7% for each OASIS SB labor category."  *Id.* at 125.  The Solicitation then explained:

> If an Offeror does not meet one or more of these parameters
> for any labor category, the Offeror is strongly advised to
> provide clear and convincing rationale to support the
> proposed direct/indirect and/or profit rate(s).  In the event
> the rationale is not determined reasonable, the proposal **will**
> be deemed to have a ceiling rate(s) that is *not considered fair
> and reasonable* and the proposal *would not be eligible for award*,
> regardless of technical score.

*Id.* (emphasis added).  Finally, the Solicitation provided that "[t]he OASIS SB evaluation team will perform a two-step screening process for all offers received."  *Id.* at 115.  In the first step, the Solicitation explained that the evaluation "team will verify that a support document exists for all the evaluation criteria."  *Id.*  The Solicitation expressly warned that "[a]ny proposal that includes incomplete information or does not comply with the instructions set forth in Sections J, K, and/or L of this solicitation in regard to the minimum submission requirements (Section K and Sections L.1 through L.5.3.1, Section L.5.4, and *Section L.5.6* through L.5.6.1) may be removed from consideration for award without further evaluation."  *Id.* (emphasis added).

> 2.      DigiFlight's Proposal

DigiFlight, a Maryland-based small business, submitted a timely proposal.  Compl. ¶¶ 6, 17.  DigiFlight, however, proposed a 9% profit rate, exceeding the 7% profit rate that the Solicitation specified in Section L.5.6(j).  *Id.*  DigiFlight admits in its complaint that its proposal did not comply with Solicitation Section L.5.6(j) insofar as the proposal "failed to provide . . . rationale for why [DigiFlight's] proposed profit was fair and reasonable."  *Id.*

On March 16, 2020, about nine months after the proposal deadline had passed, the GSA Contracting Officer sent DigiFlight a letter "to request clarification pursuant to FAR Part 15.306(a)(1) regarding [DigiFlight's] proposal submission in response to the . . . Solicitation."  ECF No. 1-2 at 1; Compl. ¶ 18.  The letter explained:

> In conducting our initial review of your proposal, we found
> the following discrepancies between your proposal
> documentation and the Solicitation requirements:

- Solicitation L.5.6.(j) requires a rationale for any Profit Rate that exceeds 7%.

  o The Government is unable to identify any rationale to support the proposed 9% profit.

  In accordance with Section M.3.(a), any proposal that includes incomplete information or does not comply with the instructions set forth in Sections J, K, and/or L of this solicitation in regard to the minimum submission requirements (Section K and Sections L.1 through L.5.3.1, Section L.5.4, and Section L.5.6 through L.5.6.1) may be removed from consideration for award without further evaluation.

  In accordance with Section M.2.(d), the Government intends to award contracts without discussions, and prospective Offerors were instructed that initial proposals must contain their best offer.  In accordance with Section M.3.(a), the Government may conduct clarifications as described in FAR 15.306.  This communication is for <u>clarification purposes only</u> to facilitate the Government's evaluation process.  Your firm <u>is not</u> being provided with an opportunity for a proposal revision or modification.

ECF No. 1-2 at 1 (emphasis in original).  The letter then requested that DigiFlight "[i]dentify where in the submitted proposal documentation (e.g., folder name, file name, page number as appropriate), the following solicitation requirements are adequately addressed: **L.5.6.(j)**." *Id.* (emphasis in original).

DigiFlight was unable to comply with the Contracting Officer's request because, as noted previously, DigiFlight's proposal indeed had failed to articulate the required rationale.  Compl. ¶ 17.  DigiFlight instead sought, for the first time, to provide GSA with a rationale for why the proposed 9% profit rate was fair and reasonable.  *Id.* at 15.  DigiFlight additionally asserted, based on a decision from the Court of Federal Claims, that although DigiFlight had failed to provide the required information in its initial proposal, DigiFlight's subsequent submission constituted a mere "clarification" for purposes of the GSA's evaluation process.  *Id.* at ¶¶ 18–19.

On May 29, 2020, GSA informed DigiFlight that GSA had not selected DigiFlight's proposal for an award.  *Id.* at ¶ 20; ECF No. 1-1 at 1.  Among other things, GSA explained in its post-award debriefing letter as follows:

Sections M.5.4.(b), (c), and (d) provides [sic] the requirements to determine an Offeror's direct labor rates, indirect rates, and

profit as fair and reasonable. Section M.5.4.(f). states, "If an Offeror does not meet one or more of these parameters for any labor category, the Offeror is strongly advised to provide clear and convincing rationale to support the proposed direct/indirect and/or profit rate(s). In the event the rationale is not determined reasonable, the proposal will be deemed to have a ceiling rate(s) that is not considered fair and reasonable and the proposal would not be eligible for award, regardless of technical score."

Section L.5.6.(j) instructs the Offeror, "For Profit, Offeror's [sic] shall consider the risk to the Government under a sole-source T&M/L-H type Task Order and propose a profit rate that does not exceed 7%. CAUTION: Failure to provide clear and convincing rationale to support a profit rate that exceeds 7% will result in a determination that Profit is not fair and reasonable and the Offeror would not be eligible for award regardless of their technical score." Section M.5.4.(e) informed the Offeror, "For Profit, the basis of fair and reasonableness will be no more than 7% for each OASIS SB labor category." Section M.5.4.(f) additionally instructed the Offeror, "If an Offeror does not meet one or more of these parameters for any labor category, the Offeror is strongly advised to provide clear and convincing rationale to support the proposed direct/indirect and/or profit rate(s). In the event the rationale is not determined reasonable, the proposal will be deemed to have a ceiling rate(s) that is not considered fair and reasonable and the proposal would not be eligible for award, regardless of technical score." Sections L.5.6.(j), M.5.4.(e), and M.5.4.(f) all clearly cautioned that any proposal that provided for more than 7% profit would result in a proposal that is not considered fair and reasonable and would not be eligible for award, regardless of technical score, unless a clear and convincing rationale was provided to support the proposed direct and/or or profit rates. The rationale is not optional for any Offeror that proposes more than 7% profit, it is a material requirement of their proposal submission. Your proposal included a profit of 9% and failed to provide any rationale document with your original submission. Your failure to include this rationale document is a material omission and is not able to be cured through clarifications. The Government did review your proposal to see if information related to their profit existed in their original

submission but could not locate any information that would explain their profit being greater than 7% and allow the Government to determine it fair and reasonable. *The information provided in the clarification response, information essential to determine the acceptability of your proposal, is not present anywhere within the original proposal submission.*

*As your proposal failed to provide a fair and reasonable price in accordance with the solicitation criteria it was removed from consideration for award.*

ECF No. 1-1 at 1–2 (emphasis added).

### B. Procedural History

On June 24, 2020, DigiFlight filed its complaint against Defendant, the United States, in this Court.  *See* ECF No. 1.  DigiFlight's complaint characterizes the missing rationale in DigiFlight's proposal as a "clerical error" and asserts the following three counts based on GSA's decision not to award DigiFlight a contract: (1) "GSA breached its duty to seek verification of DigiFlight's clerical error of not providing an explanation for seeking 9% profit as required by Section L.5.6(j)," Compl. ¶¶ 21–28 (Count I) (capitalization removed); (2) "the Contracting Officer's decision not to use the information that DigiFlight provided in a clarification request constituted an abuse of discretion because the Contracting Officer's decision was based on an erroneous conclusion of law," *id.* at ¶¶ 29–37 (Count II) (capitalization removed); and (3) "GSA cannot provide 'a coherent and reasonable explanation' for its exercise of discretion to exclude DigiFlight's proposal from consideration for award."  *Id.* at ¶¶ 38–41 (Count III) (capitalization removed).

On June 30, 2020, the Court held an initial status conference to discuss case management and scheduling issues.  *See* ECF No. 7.[4]  Following the status conference, on July 1, 2020, the Court ordered the parties to file with the Court a joint status report, proposing a schedule for further filings in this bid protest.  ECF No. 9 at 2.  As discussed during the status conference, the Court noted its concern "regarding whether DigiFlight's complaint, on its face, states a claim for relief" given the Solicitation's language concerning the proposed profit rationale and the admission in DigiFlight's complaint that DigiFlight's proposal did not include any rationale regarding its proposed profit rate.  *Id.*  Accordingly, the Court ordered the parties to indicate in the joint status report whether the Court should consider a motion regarding those issues prior to the government's filing of the administrative record and the parties' filing of

---

[4] On June 30, 2020, Judge Firestone transferred the above-captioned case to the undersigned Judge.  *See* ECF No. 10.

any motions for judgment on the administrative record. *Id.* at 2–3.[5] On July 7, 2020, the parties filed a joint status report, in which the government requested time to file such a motion prior to the preparation and filing of the administrative record. ECF No. 11 at 1. DigiFlight "d[id] not oppose this request," *id.*, and the Court, subsequently, set a briefing schedule. ECF No. 12.

On July 24, 2020, the government filed its motion for judgment on the pleadings or, in the alternative, to dismiss DigiFlight's complaint for failure to state a claim pursuant to RCFC 12(b)(6). ECF No. 15. On August 13, 2020, DigiFlight filed its response in opposition to the government's motion. ECF No. 17. On August 27, 2020, the government filed its reply in support of its motion. ECF No. 18.

## II.    Standard Of Review

Pending before the Court is Defendant's motion for judgment on the pleadings pursuant to RCFC 12(c), or, in the alternative, a motion to dismiss for failure to state a claim pursuant to RCFC 12(b)(6). "[W]hen considering a motion under RCFC 12(c), the court applies substantially the same test as it does for a motion to dismiss for failure to state a claim under RCFC 12(b)(6)." *Sikorsky Aircraft Corp. v. United States*, 122 Fed. Cl. 711, 719 (2015) (citing *Xianli Zhang v. United States*, 640 F.3d 1358, 1364 (Fed. Cir. 2011) and *Peterson v. United States*, 68 Fed. Cl. 773, 776 (2005)). A defendant may move for judgment on the pleadings pursuant to RCFC 12(c) "[a]fter the pleadings are closed," *i.e.*, after the defendant has filed an answer to the complaint. *See Solar Turbines, Inc. v. United States*, 16 Cl. Ct. 304, 305 (1989). The Court, however, may treat a motion for judgment on the pleadings that a defendant filed prematurely as a motion to dismiss the complaint. *See id.*; *cf. Peterson*, 68 Fed. Cl. 773, 776 (2005) ("Courts have routinely construed a motion to dismiss for failure to state a claim filed after the answer as a motion for judgment on the pleadings.").

When considering a motion to dismiss a complaint for failure to state a claim on which the Court may grant relief pursuant to RCFC 12(b)(6), the Court accepts as true all *factual* allegations — but not legal conclusions — contained in a plaintiff's complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For a plaintiff's complaint to survive a motion to dismiss, the Court — viewing the facts in the light most favorable to

---

[5] The Court, in its July 1, 2020 Order, suggested that any such motion might be considered a motion for judgment on the pleadings. *See* ECF No. 9 at 2. The government, in its motion, pointed out, and the Court agrees, that the proper procedural motion at this stage is a motion to dismiss pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). ECF No. 15 at 5 n.2. Regardless, the Court cannot perceive any harm to either party because "[t]he standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 2747 (2019) (citations omitted).

the plaintiff — must conclude that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff may not simply plead "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The Court must dismiss a complaint "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

### III.     The Court Grants The Government's Motion To Dismiss The Complaint

DigiFlight's complaint fails to state a claim on which the Court may grant relief. Count One and Count Two of DigiFlight's complaint begin from the erroneous premise that DigiFlight's failure to include the required rationale behind its proposed profit rate was a "clerical error." Whether DigiFlight's omission was a clerical error, however, is a legal conclusion, not a fact, and this Court holds that the deficiency was material, not minor or clerical. Accordingly, Counts One and Two do not plausibly state a claim for relief. Count Three fares no better, as it presents nothing more than an untimely solicitation challenge that this Court must reject. Accordingly, the Court must dismiss DigiFlight's complaint in its entirety.

#### A.     The Court Grants The Government's Motion To Dismiss Counts One And Two Of The Complaint

In Count One of the complaint, DigiFlight alleges that "GSA breached its duty to seek verification of DigiFlight's clerical error of not providing an explanation for seeking 9% profit as required by Section L.5.6(j)." Compl. ¶¶ 21–28 (Count One) (capitalization removed). In Count Two of DigiFlight's complaint, DigiFlight alleges that GSA's "decision not to use information that DigiFlight provided in a clarification request constituted an abuse of discretion because the Contracting Officer's decision was based on an erroneous conclusion of law," *i.e.*, that it would not be appropriate for GSA to accept DigiFlight's missing rationale in response to the Agency's request for clarification. *Id.* ¶¶ 29–37 (Count Two) (capitalization removed). DigiFlight begins both counts from the erroneous premise — a legal conclusion — that "DigiFlight's proposal contained a clerical error in the form of an omission of the information required by Section L.5.6(j)." *Id.* ¶¶ 22, 30. In characterizing its proposal deficiency as a "clerical error," DigiFlight argues that GSA "had an obligation to seek verification of the suspected clerical error" and that GSA's decision not to use the information that DigiFlight provided in a clarification request was an abuse of discretion. *Id.* ¶¶ 24, 37.

The government, in its motion to dismiss, argues that "[b]ecause DigiFlight admittedly failed to submit its profit rationale—a material [solicitation] requirement— its complaint fails to state any claim for which relief can be granted." ECF No. 15 at 6.

Put differently, the government asserts that DigiFlight's proposal deficiency was not a minor or clerical error; it was a material error. Accordingly, the government claims that DigiFlight's complaint fails to state a claim on which the Court may grant relief because GSA had no duty to seek verification of DigiFlight's material error and GSA did not base its decision to refuse to consider the information that DigiFlight provided in a clarification request on an erroneous conclusion of law. The Court agrees.

1.    DigiFlight's Omission Was A Material Error, Or, In The Alternative, Failed A Mandatory Minimum Requirement

FAR 15.305(a) provides that "[a]n agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the solicitation." FAR 15.206(d) further provides that "[i]f a proposal of interest to the Government involves a departure from the stated requirements, the contracting officer shall amend the solicitation, provided this can be done without revealing to the other offerors the alternate solution proposed or any other information that is entitled to protection." Taken together, these FAR provisions enunciate the principle that an agency cannot award a contract to an offeror "that did not meet the mandatory requirements of the solicitation." 15 No. 8 Nash & Cibinic Rep. ¶ 40. The Federal Circuit likewise has explained that "a proposal that fails to conform to the material terms and conditions of the solicitation should be considered unacceptable and a contract award based on such an unacceptable proposal violates the procurement statutes and regulations." *E.W. Bliss Co. v. United States*, 77 F.3d 445, 448 (Fed. Cir. 1996); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). Indeed, an agency contracting officer has three choices when a proposal does not meet a solicitation's mandatory requirements: "(1) amend the solicitation in accordance with FAR 15.206(d), (2) negotiate with the offeror to get it to meet the requirements, or (3) reject the proposal." 15 No. 8 Nash & Cibinic Rep. ¶ 40.

A material solicitation requirement is one that (1) is express in the solicitation, and (2) serves a "substantive purpose." *ManTech Advanced Sys. Int'l, Inc. v. United States*, 141 Fed. Cl. 493, 506 (2019) (citing *Bus. Integra, Inc. v. United States*, 116 Fed.Cl. 328, 333 (2014)). This Court has further defined "substantive purpose" to mean something that is "important to the government's evaluation of the offer, is binding on the offeror, or has a more than negligible impact on the price, quantity, or quality of the bid." *Id.* at 506–07 (citing *Bus. Integra, Inc.*, 116 Fed.Cl. at 333, *ST Net, Inc. v. United States*, 112 Fed. Cl. 99, 106–110 (2013), *Blackwater Lodge & Training Ctr., Inc. v. United States*, 86 Fed. Cl. 488, 505 (2009), and *Furniture by Thurston v. United States*, 103 Fed. Cl. 505, 518 (2012)). Moreover, to the extent that Federal Circuit case law has yet to recognize this explicitly, this Court holds that so-called "mandatory minimum requirements" are always – and by definition constitute – material solicitation

requirements.  That is so because a mandatory minimum requirement is one "that a proposal must meet . . . in order to be eligible for evaluation or, conversely, that failure to comply with . . . will lead to outright rejection of the proposal."  *ManTech Telecommunications & Info. Sys. Corp. v. United States*, 49 Fed. Cl. 57, 67 (2001), *aff'd*, 30 F. App'x 995 (Fed. Cir. 2002).  A proposal's failure to satisfy a material, or mandatory minimum, solicitation requirement is a material error.

To determine whether a solicitation requirement is "material" or a "mandatory minimum," the Court must interpret the solicitation.  *See id.*  Interpretation of a solicitation "begin[s] with the plain language of the document."  *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004).  "If the provisions of the solicitation are clear and unambiguous, they must be given their plain and ordinary meaning; we may not resort to extrinsic evidence to interpret them."  *Id.*

In this case, the Solicitation was clear and unambiguous, and the requirement that an offeror's proposal include "rationale to support a profit rate that exceeds 7%" was material.  ECF No. 15-1 at 113.

First, the Solicitation expressly identified the requirement.  In all capital letters, the Solicitation actually and clearly warned offerors:

> CAUTION: Failure to provide clear and convincing rationale to support a profit rate that exceeds 7% will result in a determination that Profit is not fair and reasonable[,] and the Offeror would not be eligible for award regardless of their technical score.

*Id.*  As if the instructions to offerors were not clear enough, the Solicitation reiterated this requirement in the evaluation criteria.  *Banknote Corp. of Am.*, 365 F.3d at 1353 ("[W]e must consider the solicitation as a whole, interpreting it in a manner that harmonizes and gives reasonable meaning to all of its provisions . . . .").  In that regard, Section M of the Solicitation provided that, "[f]or Profit, the basis of fair and reasonableness will be no more than 7% for each OASIS SB labor category."  *Id.* at 125.  The Solicitation further clarified:

> If an Offeror does not meet one or more of these parameters for any labor category, the Offeror is strongly advised to provide clear and convincing rationale to support the proposed direct/indirect and/or profit rate(s).  In the event the rationale is not determined reasonable, the proposal will be deemed to have a ceiling rate(s) that is not considered fair and reasonable and the proposal would not be eligible for award, regardless of technical score.

*Id.* Accordingly, the Solicitation clearly identified the requirement, satisfying the first prong of this Court's test for materiality.

Second, the requirement that an offeror's proposal include "rationale to support a profit rate that exceeds 7%" served a "substantive purpose" because it was "important to the government's evaluation of the offer." *ManTech Advanced Sys. Int'l, Inc.*, 141 Fed. Cl. at 506. The Solicitation makes this point plain. The Solicitation expressly required the profit rationale so that GSA could determine whether an offeror's price was "fair and reasonable." ECF No. 15-1 at 113, 125. Indeed "the objective of proposal analysis is to ensure that the final agreed-to price is *fair and reasonable*," FAR 15.404-1(a) (emphasis added), because the FAR requires contracting officers to "[p]urchase supplies and services from responsible sources *at fair and reasonable prices*." FAR 15.402(a) (emphasis added).

The Solicitation requirement at issue plainly serves a substantive purpose, and, thus, the Solicitation requirement satisfies the second prong of this Court's test for materiality. Accordingly, the requirement that an offeror include "rationale to support a profit rate that exceeds 7%" was a material Solicitation requirement.

Taking the analysis one step further, the Court additionally concludes that the requirement that an offeror's proposal include "rationale to support a profit rate that exceeds 7%" effectively constituted a mandatory minimum requirement. ECF No. 15-1 at 113. This is so because the Solicitation expressly warned offerors that failure to comply with the requirement would lead to an outright rejection of the proposal. *ManTech Telecommunications & Info. Sys. Corp.*, 49 Fed. Cl. at 67. The Solicitation did not mince words or afford the GSA Contracting Officer discretion; indeed, the Solicitation provided that a proposal's failure to include the required rationale "*will* result in a determination that Profit *is not fair and reasonable* and *the Offeror would not be eligible for award* regardless of their technical score." ECF No. 15-1 at 113 (emphasis added). Thus, the Solicitation put offerors on notice of the requirement itself and of the ramifications for not complying with the requirement. *See Isratex, Inc. v. United States*, 25 Cl. Ct. 223, 229 (1992). The requirement was not optional, and offerors were not free to disregard it.

DigiFlight admits that its proposal did not comply with this material, mandatory minimum Solicitation requirement because the proposal "failed to provide its rationale for why [DigiFlight's] proposed profit was fair and reasonable." Compl. ¶ 17. Accordingly, DigiFlight's proposal deficiency was a material error which required the agency's rejection of DigiFlight's proposal.

2.      Counts One And Two Fail To State A Claim

Once DigiFlight's omission is characterized properly as a material error rather than a clerical one, Counts One and Two of DigiFlight's complaint fail to state a claim upon which the Court may grant relief.

In Count One of DigiFlight's complaint, DigiFlight alleges that "GSA breached its duty to seek verification of DigiFlight's clerical error of not providing an explanation for seeking 9% profit as required by Section L.5.6(j)."  Compl. ¶¶ 21–28 (Count One) (capitalization removed).  When properly characterized as a material error, however, DigiFlight cannot plausibly claim that the GSA had any such duty.  The FAR describes the spectrum of authority vested in a contracting officer to act regarding clerical errors in proposals, depending on the type of procurement at issue.  *See BCPeabody Constr. Servs., Inc. v. United States*, 112 Fed. Cl. 502, 508 (2013) (discussing authority based on type of procurement).  "Where sealed bids are concerned, the rules regarding clerical and other mistakes in offers are cast in mandatory terms."  *Id.* at 508–09; FAR 14.407-1 ("In cases of apparent mistakes and in cases where the contracting officer has reason to believe that a mistake may have been made, the contracting officer *shall request from the bidder a verification of the bid*, calling attention to the suspected mistake.") (emphasis added).  In negotiated procurements, however, "the regulatory provisions regarding mistakes discovered before award in bids for negotiated procurements are largely discretionary."  *BCPeabody Constr. Servs., Inc.*, 112 Fed. Cl. at 509.  If a contracting agency intends to award a contract without discussions, then "offerors *may* be given the opportunity to clarify certain aspects of proposals . . . or to resolve *minor or clerical errors*."  FAR 15.306(a)(2) (emphasis added).  There is, however, no corresponding duty that an agency permit the correction of a material error, and DigiFlight has not identified any source of law that mandates that an agency do so.  *See Mission Essential, LLC*, B-418767, Aug. 31, 2020, 2020 WL 5369473 at *7 ("[A]gencies are not required to conduct discussions when, as here, the solicitation expressly advises offerors of the agency's intent to make [an] award on the basis of initial proposals."); ECF No. 15-1 at 114 ("The Government intends to award contracts without discussions.").  Accordingly, because GSA had no duty to permit DigiFlight to correct its material error, the Court grants the government's motion to dismiss Count One of DigiFlight's complaint.

In Count Two of DigiFlight's complaint, DigiFlight alleges that GSA's "decision not to use information that DigiFlight provided in a clarification request constituted an abuse of discretion because the Contracting Officer's decision was based on an erroneous conclusion of law," *i.e.*, that it would not be appropriate for GSA to accept DigiFlight's missing rationale in response to the Agency's request for clarification.  *Id.* ¶¶ 29–37 (Count Two) (capitalization removed).  "While the line between 'clarification' and 'discussion' is not always easy to demarcate," *BCPeabody Constr. Servs., Inc.*, 112

Fed. Cl. at 510, the FAR is clear that "[c]ommunications with offerors before the establishment of the competitive range . . . shall not be used to cure proposal deficiencies or *material omissions*." FAR 15.306(b)(2) (emphasis added); *see also Mission Essential, LLC*, B-418767 at *7 ("Providing an offeror the opportunity to revise its proposal and cure a deficiency would constitute discussions, not clarifications, because that would require the revision of information that was a condition-precedent to being eligible for award."). As the Court explained above, DigiFlight's proposal deficiency was a material, not a clerical, error. Accordingly, the GSA Contracting Officer's decision was not based on an erroneous conclusion of law, and Count Two of DigiFlight's complaint fails to state a claim on which the Court may grant relief.

Three other points are worth noting here. First, even if the regulations and the case law were not clear, the Federal Circuit has instructed that "we give deference to an agency's permissible interpretation of its own regulations" in situations such as this. *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1323 (Fed. Cir. 2003). From the facts alleged in the complaint (and its incorporated documents), the Court is convinced that "[i]t was a reasonable interpretation of the acquisition regulations to view" the information that DigiFlight provided as not the proper subject of "clarifications, and we defer to that interpretation." *Id.*

Second, the Solicitation did not afford the GSA Contracting Officer any discretion in this matter; to the contrary, the Contracting Officer acted pursuant to the Solicitation's terms. The Solicitation expressed, in mandatory terms, that GSA "would" exclude an offeror from the competition if the proposed profit rate exceeded 7% and the proposal failed to provide rationale to support the reasonableness of that rate. ECF No. 15-1 at 113. The Solicitation also provided that GSA intended to make the award "without discussions." *Id.* at 114.[6]

Finally, as a practical matter, allowing this protest to proceed would have serious and detrimental consequences for government procurement. Taken to its logical extreme, DigiFlight's position is that an offeror, in response to a solicitation, would be able to submit only its company name on a sheet of paper and then the law would require an agency to alert the offeror to every piece of required information that the offeror's "proposal" omitted and provide that offeror the opportunity to submit all of that information after proposals were due — indeed, after the agency already has received and evaluated proposals. Further, DigiFlight's position essentially is that if an agency contracting officer excludes an offeror from the competition for material

---

[6] To the extent that DigiFlight believes that GSA should not have excluded offerors' proposals for omitting this rationale or should have permitted offerors to cure any failure to provide the required rationale through clarifications, DigiFlight was required to protest the terms of the Solicitation prior to the due date for proposals (in this case, June 20, 2019). *See infra* III.B.

omissions, or does not consider all of the information that an offeror submits after the time for receipt of proposals, then such an offeror is entitled to force the government to put the procurement on hold, review the entire administrative record, and make whatever other protest arguments that the offeror can develop at that stage.  That position is untenable.

At the end of the day, in this case, DigiFlight failed to provide information that the Solicitation required offerors to provide in their initial proposals, the Solicitation clearly explained that GSA would exclude an offeror from the competition if the offeror did not provide the information, and GSA excluded DigiFlight for that exact reason (as the agency was required to do).  The Court will not permit DigiFlight's (untimely) fishing expedition.

The Court **GRANTS** the government's motion to dismiss Counts One and Two of DigiFlight's complaint.

### B.     The Court Grants The Government's Motion To Dismiss Count Three Of The Complaint

In Count Three of DigiFlight's complaint, DigiFlight alleges that "GSA cannot provide a coherent and reasonable explanation for excluding DigiFlight's proposal from consideration for award based on a proposed profit of 9% when DigiFlight's total price proposed was less than the ceiling for fair and reason [sic] as set forth in Solicitation J.2."  Compl. ¶ 41.  DigiFlight asserts that GSA cannot provide a coherent and reasonable explanation for DigiFlight's exclusion because: (1) FAR 15.404-4(c)(5) provides that a "contracting officer shall not require prospective contractors to submit … supporting rationale for its profit," Compl. ¶ 41.A.; (2) the Solicitation provides that "[a]dequate price competition at the task order level, in response to an individual requirement, establishes the most accurate, fair, and reasonable pricing for that requirement," *id.* ¶ 41.B.; and (3) "the only logical explanation for the 7% ceiling on profit is to serve as a cost cutting measure."  *Id.* ¶ 41.C.

The government, in its motion to dismiss, *see* ECF No. 15 at 14, responds, and the Court agrees, that DigiFlight's contentions are nothing more than untimely Solicitation challenges.  By waiting until June 24, 2020 to file its complaint, DigiFlight waived its challenge to the terms of the Solicitation, which had to be filed prior to the June 20, 2019 proposal due date.  As the Federal Circuit held in *Blue & Gold Fleet, L.P. v. United States*, "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims."  492 F.3d at 1313 (Fed. Cir. 2007).  "A defect in a solicitation is patent if it is an obvious omission, inconsistency, or discrepancy of significance . . .

[that] could have been discovered by reasonable and customary care." *Inserso Corp. v. United States*, 961 F.3d 1343, 1349 (Fed. Cir. 2020) (citing *Per Aarsleff A/S/ v. United States*, 629 F.3d 1303, 1312-13 (Fed. Cir. 2016)); *see Phoenix Mgmt., Inc. v. United States*, 125 Fed. Cl. 170, 182 (2016) ("[T]he purpose of the waiver rule was to prevent an offeror with knowledge of the solicitation defect from sitting on that knowledge until after the procuring agency awarded the contract and then, if unsuccessful in securing the contract, using that knowledge . . . as the basis for a protest in a second attempt to secure the contract.").

While this Court notes that FAR 15.404-4(c)(5) *does* appear to mandate that contracting officers shall not require contractors to submit supporting rationale for profit, and this Court does not necessarily understand why GSA's Solicitation included such a requirement, nonetheless the Solicitation included the profit rationale requirement, of which DigiFlight was clearly aware. Federal Circuit precedent requires this Court to find DigiFlight's post-award challenge to that requirement is barred as untimely. DigiFlight's additional challenges contained in Count Three are similarly untimely, as they are nothing more than post-award challenges to patent Solicitation ambiguities. Accordingly, the Court **GRANTS** the government's motion to dismiss Count Three of DigiFlight's complaint.

### *CONCLUSION*

For the foregoing reasons, the Court **GRANTS** the government's motion to dismiss DigiFlight's complaint. The clerk shall **DISMISS** the case, and enter judgment for the government.

**It is so ordered.**

s/Matthew H. Solomson
Matthew H. Solomson
Judge